| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF BERKELEY | |

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF BERKELEY )
)
)
DOMINIC LOWE AND AMANDA LOWE, )
AND ON BEHALF OF ALL OTHERS )
SIMILARLY SITUATED, )
)
                              Plaintiffs, )
)
vs. )
)
ALLURA USA LLC, PLYCEM USA LLC )
D/B/A ALLURA, PLYCEM USA, INC., )
ELEMENTIA USA, INC., ELEMENTIA, S.A. )
DE C.V., )
)
                              Defendants. )

Civil Action No.
20 1 8 -CP-08- 1578

**CLASS ACTION SUMMONS**
(Re: Defective Products)
(JURY TRIAL DEMANDED)

**TO THE DEFENDANTS ABOVE-NAMED:**

**YOU ARE HEREBY SUMMONED** and are required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer upon the subscribers at 864 Lowcountry Blvd., Ste. A, Mount Pleasant, South Carolina 29464, within thirty (30) days after the service thereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

SEGUI LAW FIRM PC

Phillip W. Segui, Jr.
Amanda M. Blundy
864 Lowcountry Blvd., Ste. A
Mount Pleasant, SC 29464
(843) 884-1865
psegui@seguilawfirm.com
ablundy@@@seguilawfirm.com

Mount Pleasant, South Carolina
August 1 7, 2018

Attorneys for Plaintiffs

1

STATE OF SOUTH CAROLINA )   IN THE COURT OF COMMON PLEAS
                        )
COUNTY OF BERKELEY      )
                        )   Civil Action No. _____
                        )   20 18  -CP-08- 1578 ·
DOMINIC LOWE AND AMANDA LOWE, )   CLASS ACTION COMPLAINT
AND ON BEHALF OF ALL OTHERS   )   (Re:  Defective Products)
SIMILARLY SITUATED,           )   (JURY TRIAL DEMANDED)
                        )
                Plaintiffs, )
                        )
vs.                     )
                        )
ALLURA USA LLC, PLYCEM USA LLC )
D/B/A ALLURA, PLYCEM USA, INC., )
ELEMENTIA USA, INC., ELEMENTIA, S.A. )
DE C.V.,                )
                        )
                Defendants. )

        The Plaintiffs, Dominic Lowe and Amanda Lowe, and on behalf of all others similarly

situated, complaining of the Defendants named herein, would respectfully allege and show the

Court as follows:

## NATURE OF ACTION

        1.      This is a class action asserting negligence/gross negligence, breach of express

warranty, breach of implied warranties of merchantability and fitness for particular purpose,

negligent misrepresentation, strict products liability and seeking damages in connection with

defective fiber cement siding designed, manufactured, marketed, advertised, distributed, and sold

by Defendants, Allura USA LLC, Plycem USA LLC d/b/a Allura, Plycem USA, Inc., Elementia

USA, Inc. and Elementia, S.A. de C.V. (hereinafter referred to as "Defendants").

## THE PARTIES

2.      Plaintiffs Dominic Lowe and Amanda Lowe are natural persons and citizens of South Carolina. Plaintiffs own a home in Berkeley, South Carolina (Berkeley County), in which Defendants' fiber cement siding are installed.

3.      Defendant Allura USA LLC, is a subsidiary of Plycem USA LLC and Plycem USA, Inc., with a principal place of business in the State of Texas, and at all times relevant herein, Allura USA LLC transacted and conducted business in South Carolina. It manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' home and those of thousands of Class Members in South Carolina and the United States.

4.      Defendant Plycem USA LLC d/b/a Allura was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Plycem USA LLC d/b/a Allura transacted and conducted business in South Carolina.   It manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' home and those of thousands of Class Members in South Carolina and the United States.

5.      Defendant Plycem USA Inc. was and is a corporation organized and existing under the laws of the State of Georgia, with a principal place of business in the State of Texas and all times relevant herein, Plycem USA Inc. transacted and conducted business in South Carolina. It manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' home and those of thousands of Class Members in South Carolina and the United States.

2

6.     Defendant Elementia USA, Inc., is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Elementia USA, Inc. transacted and conducted business in South Carolina. It manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' home and those of thousands of Class Members in South Carolina and the United States.

7.     Defendant Elementia, S.A. de C.V. was and is a corporation organized and existing under the laws of another country and at all times relevant herein, Elementia, S.A. de C.V. conducts and is engaged in business in the State of South Carolina. It manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' home and those of thousands of Class Members in South Carolina and the United States.

8.     At all times relevant herein, Elementia, S.A. de C.V., Elementia USA, Inc., Plycem USA LLC, Plycem USA Inc., and Allura USA LLC jointly transacted and conducted business in South Carolina. The Defendants are the agents and/or alter egos of each other, and the corporate interests of these Defendants were amalgamated so that they in effect operated as one and the same entity. Accordingly jurisdiction over the Defendants is proper in this Court under South Carolina Code Ann. § 36-2-802 (1976).

9.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the fiber cement siding at issue.

10.     At all times relevant herein, the Defendants were actual and/or de facto joint venturers in the design, development, manufacture, marketing, and sales of the fiber cement siding at issue.

3

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the parties and subject matters hereto and that the allegations out of this action all involve fiber cement siding that was marketed, sold, supplied and distributed in South Carolina.

## FACTUAL ALLEGATIONS

12. Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the fiber cement siding that is the subject of this litigation.

13. At all times relevant herein, Defendants were engaged in the design, manufacturing, marketing, sale, supply and delivery of the fiber cement siding in the State of South Carolina.

14. At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed the fiber cement siding ("the Siding").

15. In 2015, Plaintiffs contracted for the construction of a home with the property address of 512 Nelliefield Trail, Charleston, South Carolina. The Siding was used int he construction of the homes.

16. This lawsuit arises out of damages sustained by Plaintiffs and the Class that were proximately caused by Defendants' defective Siding used in the construction of Plaintiffs' and Class Members' homes and other structures.

17. Defendants sold and distributed Siding throughout South Carolina for installation on homes, commercial buildings, and other structures. At all times material hereto, Defendants marketed and represented the Siding that "Allura won't rot, warp, fade, burn or disappoint.

4

Allura Fiber Cement products are made with an advanced formula that resists damage from moisture, rot, hail and termite attacks. Best of all, Allura products are suitable in even the most extreme hot and cold climates and are non-combustible."

18.    Specifically, Defendants sold its Siding to Plaintiffs and members of the Class with a warranty that its Siding will be free from manufacturing defects for a period of fifty (50) years from the date of the purchase of the product.

19.    The 50 Year Transferrable Limited Product Warranty (hereinafter referred to as "Warranty") offered by the Defendants promised to the retail purchaser of the Siding, the owners of the property on which the Siding was installed, and the first transferee of the property on which the Siding was installed that Defendants will repair, replace or reimburse up to twice the original retail cost of the defective portion of the Siding should the Siding be defective.

20.    The Siding was installed in Plaintiffs' home during construction.

21.    After moving into their home, Plaintiffs began experiencing problems with their Siding including severe cracking of the Siding.

22.    As a result of the cracking of the Siding, water has or will intrude, leading to deterioration of the sheathing beneath the Siding, decreased life expectancy of the Siding, and degradation of the Siding and other building components.

23.    Plaintiffs contacted the general contractor, Crescent Homes, who installed the Siding during construction, who made several visits to the site to investigate the Siding.

24.    Crescent Homes contacted the Defendants regarding the cracking Siding.

5

25.    Defendants' representatives have inspected several homes, including the class representatives' home, inspecting, evaluating, and obtaining samples of the cracked fiber cement Siding to perform tests at their laboratory.

26.    Defendants' representatives performed a collection of samples from many residences in the Nelliefield Plantation subdivision in Charleston, South Carolina; often without notice.  Defendants removed Siding from many homes and have yet to replace or repair the destructive testing that was performed.

27.    Several cracked fiber cement boards were removed from Plaintiffs' home and destroyed by Defendants' representatives.  The boards have not been replaced.

28.    Defendants sent Warranty Claim Communication to many owners of residences with the Siding on May 15, 2018 and requesting a warranty claim be made by June 1, 2018. Furthermore, the Warranty Claim Communication stated Defendants would be collecting samples during the week of May 14, 2018.

29.    Plaintiffs returned the Warranty Claims Form supplied by Defendants by June 1, 2018.

30.    Responding to Plaintiffs' Warranty Claims Form, Defendants did not admit liability for the cracking of board, but stated the tests were inconclusive and that the boards installed prior to 2014 could be CertainTeed siding and those owners would be contacted about filing a claim with CertainTeed.

31.    Plaintiffs continue to experience severe cracking and deterioration of the Siding and the terms of the Warranty were not completed by the Defendants.

32.    As a result, Plaintiffs had no other alternative than to file suit.

6

33.    The Siding is defective and fails to perform at Plaintiffs' residence and at Class Members' residences by cracking, allowing excess moisture into the structures and decreasing the ability to withstand weather events. These defects manifest and worsen over time, indicating degradation of the material.

34.    Upon information and belief, these defects have manifested themselves uniformly in the Siding installed on the homes of Plaintiffs and Class Members.

35.    The water intrusion and above-described damages resulting from the Siding constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

36.    The above-described defects are due to fundamental design, engineering and manufacturing errors, which should have been within Defendants' expertise.

37.    Because the Siding cracks, prematurely degrades, otherwise fails and permits water intrusion, it violates the building codes and industry standards.

38.    The above-described deficiencies exist at the time the Siding leaves the factory.

39.    Failure of the Siding begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

40.    Defendants knew or should have known that the defects were present at the time the Siding left their control.

41.    Defendants knew or should have known the potential for cracking, premature degradation and failure of their Siding, but failed to adequately correct the defective design or formulation that resulted in said damage.

42.     Defendants knew or should have known the potential for cracking, premature degradation and failure of their Siding, but failed to adequately correct the defective manufacture and that resulted in said damage.

43.     Defendants failed to warn purchasers, installers or users of the above-described risks of failures.

44.     The purchase of Defendants' Siding includes a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser at the time of sale.

45.     The Siding's express warranty also forms part of the basis of the bargain between the seller of the home and home buyers, including Plaintiffs and Class Members.

46.     Defendants also expressly and implicitly represents in documents available to the public that their warranty is part of the product being sold and that the written warranties apply to the owners of the homes containing the Siding.

47.     Defendants represent in their express warranty and documents available to the public that the Siding would be free from defective materials and workmanship for at least 10 years.

48.     Plaintiffs and Class Members relied upon these representations when they purchased the structures containing the Siding.

49.     Plaintiffs and Class Members reasonably expected and expect that the Siding would last longer than 4 years.

50.     Defendants' representations, expressly and impliedly, through their website, and marketing materials that the Siding is suitable and free from defects, were intended to and likely

did affect the market by inducing builders, contractors, suppliers, and others to purchase the Siding.

51.    Plaintiffs put the installer/supplier of the Siding and Defendants on notice of the defects and damages; and Defendants were also put on notice of defects and damages by the installer/supplier of the Siding.

52.    Defendants and/or their representatives purportedly attempted to evaluate and test the defective Siding.

53.    Defendants and/or their representatives failed to adequately remedy the defects and damages and Plaintiffs and Class Members have not received an adequate remedy since the submission of the Warranty Claim of June 1, 2018.

54.    Defendants were put on notice of defects and resultant damages in the Siding by other homeowners in South Carolina and other states across the country.

55.    Defendants' shipping of the Siding with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and therefore void *ab initio*.

56.    The published written warranties include the following limitations and exclusions:

  (a)    The warranty is excludes the costs or expenses for labor or accessory materials.

  (b)    The warranty requires homeowners, at their own expense, provide protection of all property that could be affected until the claimed defect is remedied;

(e)     The warranty disclaims all liability for any incidental, consequential, or special damages of any type, including limitation of any and all claims pertaining to property damage, breach of warranty, breach of contract, tort, or any other legal claim or theory.

(d)     The warranty also disclaims any warranties except the limited warranty of the Warranty.

(e)     The warranty states a Claimant Questionnaire must be completed, signed and returned to Defendants  (along with photographic evidence requested in the Claimant Questionnaire) within sixty (60) after the date on which Defendants provided the Claimant Questionnaire to the Claimant; However, Defendants required Plaintiffs to return the information requested with the Claimant Questionnaire in less than fifteen (15) days.

(f)     The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion; and

(g)     In other such ways revealed during discovery, and/or otherwise determined at trial.

57.     The warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

58.     Further, Defendants have failed to honor warranty claims by failing to respond to the homeowner and removing Siding from Plaintiffs' homes with no replacements, leaving areas of the homes exposed to additional damage.

59.     The above described pattern and practice by Defendants have the effect of discouraging defect claims by Class Members or continuing to pursue remedies through the Defendants.

60.     Moreover, during contact with Class Members, Defendants have stated they are having issues with cracking of the Siding in many communities.

61.     As Defendants have known or should have known of their Siding' defects and have failed to timely honor their warranty, the warranty has failed of its essential purpose and the limitations therein are null and void, and the Plaintiffs and Class Members have otherwise not received the value for which they, their builders or contractors bargained for at the time the Siding was purchased or transferred to homeowners.

62.     Given the early and severe cracking in the Siding that requires unexpected maintenance and premature repair and replacement, the Siding has not lived up to the Defendants' representations and warranties.

63.     The defects in Defendants' Siding also make the Siding unfit for their intended use.

64.     Given the cracking, premature degradation, and failure of the Siding, the Siding has a reduced life expectancy, and require unexpected maintenance, repair, and replacement by Plaintiffs and Class Members.

65.     The Siding defects and resultant damages have caused a diminution of the value of the homes.

66.     Defendants knew or should have known that the Siding did and do not satisfy industry standards.

67.     Defendants knew or should have known that their Siding was defective in design and manufacture, not fit for their ordinary and intended use, not merchantable, and failed to perform in accordance with the advertisements, brochures, representations, marketing materials and warranties disseminated by Defendants.

68. Defendants' Siding failed to conform to the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

69. Because the Siding cracks and allows for increased water absorption, water penetration, cause reduced life expectancy, decreased wind load capacity, and otherwise fail, the Siding is neither durable nor suitable for use as an exterior building product.

70. The above-described defective conditions of the Siding and resultant damages are present in Plaintiffs' home and are common among Class Members.

71. As a direct and proximate result of purchasing and installing Defendants' Siding, Plaintiffs and the Class Members have suffered damages, in that the Siding on their homes and other structures has and will continue to fail prematurely, resulting in damage to the Siding and underlying structures and requiring them to expend thousands of dollars to repair the damage associated with the incorporation of the Siding into their homes and other structures, or to prevent such damage from occurring.

## CLASS ACTION ALLEGATIONS

72. Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Rule 23, SCRCP, on behalf of the Class. The Class is defined as follows:

> All persons and entities that own structures located within the State of South Carolina in which Defendants' Siding is installed.
>
> This class excludes:
>
> (a)    any Judge or Magistrate presiding over this action and members of their families;
>
> (b)    any employees of Defendants;

      (c)     any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants' and its legal representatives, assigns, and successors;

      (d)     any person who has released Defendants or us currently in litigation with Defendants related to Defendants' Siding; and

      (e)     all persons who properly execute and file a timely request for exclusion from the Class.

Plaintiffs propose that the Class be divided into subclasses if and as necessary to align class interests.

73.    *Numerosity*:  Members of the Class are so numerous that their individual joinder is impracticable.  While the precise number is unknown at this time, upon information and belief, the proposed Class is comprised of a least thousands of members.  The true number of Class Members is likely to be known by Defendants and may be ascertained through its books and records.

74.    *Commonality*: The critical question of law and fact common to the Class that will materially advance the litigation is whether the Siding is inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations and omissions.

75.    Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:.

      (a)     Whether the Siding is defective;

      (b)     Whether the Siding is subject to cracking and is not suitable for use as an exterior siding product for the duration of time advertised, marketed and warranted;

      (c)     Whether the Siding will continue to crack and degrade over time;

(d)     Whether Defendants were negligent in their design and manufacture of the Siding;

(e)     Whether Defendants knew or should have known about the defective condition of the Siding;

(f)     Whether Defendants concealed and/or failed to disclose the defective condition of the Siding to consumers;

(g)     Whether Defendants breached their express and implied warranties;

(h)     Whether the Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants;

(i)     Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants;

(j)     Whether Plaintiffs and the Class are entitled to compensatory damages and the amount of damages for the removal and replacement of the defective Siding; and

(k)     Whether Defendants' representations regarding suitability and exemplary nature of its Siding, and its omissions and concealment of facts to the contrary regarding the Siding defects constitute violations of the South Carolina's Unfair Trade Practices Act.

76.     *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Siding and Defendants' conduct in concealing the defects in the Siding to owners, contractors, developers, and suppliers.

77.     *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class given the Plaintiffs are members of the Class he and she also seek to represent.   The Plaintiffs have

retained counsel experienced and competent in construction litigation, product liability, complex litigation and consumer class actions.

78.    *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and/or courts throughout South Carolina would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

79.    Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and absent a class action, the vast majority of Class Members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendants and be made whole.

## ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS

80.    Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class Members' claims.

81.    By virtue of Defendants' acts, the Siding installed in Plaintiffs' and Class Members' residences has not lived up to Defendants' warranties and representations, and given

the defective condition of the Siding and the premature deterioration the Siding that requires unexpected maintenance, wear and/or replacement, the Siding has not proven to be of the value bargained for and/or of that compared to other siding.

82.    Defendants knew or should have known that their Siding was defective in design and/or manufacture, and said Siding was not fit for their ordinary and intended use, was not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

83.    Accordingly, any warranty provided by Defendants fails its essential purpose because its purports to warrant that the Siding will be free from defects for a prescribed period of time when in fact said Siding falls far short of the applicable warranty period.

84.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Siding, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

85.    As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

## FOR A FIRST CAUSE OF ACTION
### Negligence/Gross Negligence

86.    The above allegations are incorporated as fully as if stated verbatim herein.

87.    At all times material hereto, Defendants designed and manufactured the Siding.

88.    Defendants had a duty to Plaintiffs and Class Members to design and manufacture Siding that was free of latent defects that would cause the Siding to crack, prematurely degrade, and otherwise fail.

89.    Defendants had a duty to Plaintiffs and Class Members to test the Siding to ensure adequate performance of the Siding for a reasonable period of use.

90.    Defendants had a duty to Plaintiffs and Class Members to ensure that the Siding was suitable as an exterior product, either by testing or by verifying third-party test results.

91.    Defendants had a duty to Plaintiffs and Class Members to ensure their Siding complied with industry standards.

92.    Defendants had a duty to Plaintiffs and Class Members to forewarn purchasers, installers, and users regarding the known risk of product failures.

93.    Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Siding.

94.    The Plaintiffs and Class Members have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendants as above-described.

95.    As Defendants' conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiffs and Class is entitled to an award of punitive damages against Defendants.

## FOR A SECOND CAUSE OF ACTION
### Breach of Implied Warranty

96.    The above allegations are incorporated as fully as if stated verbatim herein.

97.    Defendants are designers, manufacturers, and suppliers of the Siding, and for a number of years, marketed, warranted, distributed, and/or sold the Siding in South Carolina.

98.    Defendants manufactured and sold their Siding to Plaintiffs, Class Members, and/or Plaintiffs' and Class Members' agents, and in so doing, impliedly warranted to them that the product was of merchantable quality and fit for its intended use.

99.    Defendants' Siding was not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Siding described herein.

100.    The numerous and serious defects described herein make the Siding unfit and inappropriate for its intended use within structures.

101.    The Siding is also unfit for their particular purpose. Defendants manufactured and distributed their Siding in climates with multiple seasons and geographic locations.  Defendants knew, or should have known, that their Siding would be subjected to varying temperatures and weather conditions, including extreme heat and extreme cold, throughout each year.  Due to the defects and resultant cracking, premature degradation, and other failures, the Siding are unfit for their particular purpose.

102.    Despite having knowledge of the Siding defects, Defendants have failed to provide an adequate remedy.

103.    As Defendants' express warranty (and warranty claims process thereunder) has been breached and/or is unconscionable and/or fails of its essential purpose, as described above, the limitations on implied warranties contained within the express warranty should be deemed null and void and of no effect or limitation.

104.    As a result, Defendants breached their implied warranties to Plaintiffs and Class Members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

105.    Plaintiffs and Class Members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

106.    As a direct and proximate result of Defendants' breach of the implied warranty on the Siding, the Plaintiffs and Class Members have suffered actual and consequential damages.

## FOR A THIRD CAUSE OF ACTION
### Breach of Express Warranty

107.    The above allegations are incorporated as fully as if stated verbatim herein.

108.    Defendants marketed and sold Siding into the stream of commerce with the intent that the Siding would be purchased by Plaintiffs and Class Members.

109.    The representations and warranties made by Defendants in marketing and selling their Siding formed part of the basis of the bargain between Defendants and the purchasers of the Siding at the time of the sale.

110.    Purchase agreements for the construction or sale of residences or structures, including the Warranty, contained provisions transferring or assigning the manufacturers' warranties. Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

111.    The Defendants' Warranty certifies that they will replace or repair the Siding found to be defective for fifty (50) years.

112.    Upon information and belief, all of Defendants' written warranties applicable to Class Members contain the same or similar provisions.

113.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Siding, Defendants created express warranties for the benefit of Plaintiffs and Class Members.

114.    Thus, Defendants' express warranties and representations are applicable to the Siding installed in Plaintiffs' and Class Members' residences and/or structures.

115.    Specifically, Defendants expressly warranted to Plaintiffs and Class Members that the Siding purchased by Plaintiffs and Class Members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least fifty (50) years.

116.    However, Defendants' warranties fail their essential purpose because they purport to warrant that the Siding will be free from manufacturer defects for at least fifty (50) years when in fact the Siding fall far short of the applicable warranty period. To the contrary, due to the cracking in the Siding, Defendants' Siding began failing after only several years' or less of use.

117.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Siding, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

118.    Defendants have failed to pay in full and/or failed to respond to warranty claims.

119.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

120.    As a result of Defendants' breaches of express warranties, Plaintiffs and Class Members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Siding that has failed or are failing prematurely due to cracking and premature degradation. This failure has required or is requiring Plaintiffs and Class Members to incur significant expense in repairing or replacing their Siding. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs' and Class Members' residences.

121.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Siding, the Plaintiffs and Class Members have suffered actual and consequential damages.

## FOR A FOURTH CAUSE OF ACTION
### Negligent Misrepresentation

122.    The above allegations are incorporated as fully as if stated verbatim herein.

123.    Defendants, through their marketing materials, website, brochures, product literature, warranties and agents, made representations to the Plaintiffs and Class Members, builders, suppliers and the public about the superior quality and durability of their Siding and components.

124.    Defendants transmitted said representations to the Plaintiffs and Class Members, builders, suppliers and the public while failing to disclose the defective condition of their Siding, including the substantial leakage and consequential damages that would or could likely result from their Siding' defects.

125.    Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiffs and Class Members, builders, suppliers and the public.

126.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiffs and Class Members, builders, suppliers and the public relied on these representations and non-disclosures.

127.    The Plaintiffs and Class Members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

### FOR A FIFTH CAUSE OF ACTION
**Strict Liability**

128.    The above allegations are incorporated as fully as if stated verbatim herein.

129.    At all times relevant to this Complaint, Defendants were in the business of designing, manufacturing, marketing, distributing and/or selling Siding and had a statutory duty of care.

130.    Defendants breached this duty because their Siding cracks and allows for increased water absorption, water penetration, cause reduced life expectancy, decreased wind load capacity, and otherwise failure, resulting in damage to the Siding and consequential damage to the structure into which the Siding is installed.

131.    Defendants breached their duty because their Siding are defectively designed and manufactured and are unreasonably dangerous in that they crack, degrade, and otherwise fail, thereby causing damage to the Siding and consequential damage to the structure into which the Siding are installed.

132.    Were the defects known at the time of design and manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed and manufactured in that manner.

133.    Feasible alternatives existed to make the Siding safer for intended use at the time of design. Defendants were knowledgeable about the products and aware or should have been aware that feasible alternatives existed which would maintain the usefulness of the Siding and eliminate the harm.

134.    The Siding reached the Plaintiffs and Class Members, and were intended to reach the Plaintiffs and Class Members, without substantial change in the condition in which they were sold.

135.    Defendants are in violation of South Carolina Code §15-73-10, for having designed, manufactured, marketed, distributed, and sold the Siding, which was defective, to the Plaintiffs and Class Members.

136.    As a direct, foreseeable, and proximate result of the sale of the defective Siding to Plaintiffs and Class Members, the Plaintiffs and Class Members have suffered significant physical damage to their properties, other contamination and deterioration, as well as diminution in the value of the properties.

137.    Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs pray that this Court will certify a class and for judgment against Defendants, for:

> 1)    Plaintiffs' and Class Members' actual and consequential damages as found by the jury; statutory or punitive damages

against Defendants; reasonable attorneys' fees; costs of suit; and prejudgment interest;

2)      For such other and further relief at law or equity, both in general and special, as to which Plaintiffs and Class Members by this Complaint show themselves to be entitled.

SEGUI LAW FIRM PC


Phillip W. Segui, Jr.
Amanda M. Blundy
864 Lowcountry Blvd., Ste. A
Mount Pleasant, SC  29464
(843) 884-1865
psegui@seguilawfirm.com
ablundy@@@seguilawfirm.com

Mount Pleasant, South Carolina
August ▢▢, 2018

Attorneys for Plaintiffs

24

**SEGUI LAW FIRM PC**    864 Lowcountry Boulevard
Suite A
Mount Pleasant, SC 29464

T 843-884-1865

Amanda M. Blundy
ablundy@seguilawfirm.com

August 16, 2018

Mary P. Brown
Clerk of Court
Berkeley County Court of Common Pleas
P.O. Box 219
Moncks Corner, SC  29461

RE:   Dominic Lowe and Amanda Lowe, and On Behalf of All Others Similarly Situated v.
      Allura USA, LLC, Plycem USA LLC d/b/a Allura, Plycem USA, Inc. Elementia USA,
      Inc. and Elementia, S.A. de C.V.,
      Case No:     2018-CP-___-_____

Dear Ms. Brown:

Please find enclosed the original and one copy each of the Civil Action Coversheet, Summons and Complaint, as well as a check in the amount of $150.00, for the above referenced matter.  If you would, please file the originals and return the clocked copies to me in the self-addressed, stamped envelope enclosed.

Your assistance in this matter is greatly appreciated. Should you require any additional information regarding this matter, please feel free to contact me.

Sincerely,

Amanda M. Blundy

AMB/jl
Enclosures

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF BERKELEY ) | |
| ) | |
| DOMINIC LOWE AND AMANDA LOWE, AND ) | CIVIL ACTION COVERSHEET |
| ON BEHALF OF ALL OTHERS SIMILARLY ) | |
| SITUATED, ) | |
| ) | |
| Plaintiffs ) | 2018-CP - 08 - 1578 |
| ) | |
| vs. ) | |
| ) | |
| ALLURA USA LLC, ET AL., ) | |
| ) | |
| Defendants ) | |

Submitted By: Amanda M. Blundy, Esquire
Address: 864 Lowcountry Blvd., Suite A,
Mt. Pleasant, SC 29464

| | |
|---|---|
| SC Bar #: | 73069 |
| Telephone #: | (843) 884-1865 |
| Fax #: | |
| Other: | |
| E-mail: | ablundy@seguilawfirm.com |

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)
*If Action is Judgment/Settlement do not complete

X JURY TRIAL demanded in complaint.   ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
X This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20___ -NI-___.___ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| Warranty (160) | ☐ Other (299) | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | | ☐ Slander/Libel (380) | ☐ Other (499) |
| ☐ Employment (180) | | ☐ Other (399) | |
| ☐ Other (199) | | | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured | ☐ Worker's Comp (960) |
| | | Settlement Payment Rights | ☐ Zoning Board (970) |
| | | Application (760) | ☐ Public Service Comm. (990) |
| Special/Complex /Other | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Petition for Workers | |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | Compensation Settlement | ☐ Other (999) |

SCCA / 234 (03/2016)                                                      Page 1 of 3

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ | Medical (620) | ☐ | Out-of-State Depositions (650) | ☐ Other (799) _____ | | _____ |
| X | Other (699) **CONSTRUCTION DEFECTS** | ☐ | Motion to Quash Subpoena in an Out-of-County Action (660) | | | |
| ☐ | Sexual Predator (510) | ☐ | Pre-Suit Discovery (670) | | | |

**Submitting Party Signature:** _____ AUGUST _16_, 2018 _____

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

SCCA / 234 (03/2016)                                                    Page 2 of 3

· 6.  Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**     **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

# Common Pleas

**Clerk : Mary P. Brown**
**300 B California Avenue**
**Moncks Corner, SC 29461**
**Phone:(843) 719-4400  Fax:(843) 719-4509**

| | |
|---|---|
| Received From: | Blundy, Amanda Morgan |
| | 864 Lowcountry Blvd |
| | Mount Pleasant, SC 29464 |
| Paying for: | Lowe, On Behalf Of All Others Sir |

Date: 8/20/2018
Receipt #:  6082136
Clerk: c08thill

| | | |
|---|---|---|
| Transaction Type: | Payment | |
| Payment Type: | Check | $150.00 |
| Total Paid: | | $150.00 |

Reference #:  05612
Comment:
Non-Refundable

Total Received:          $150.00
Change Due:               $0.00

You may check the status of your Berkeley case at:
http://www.sccourts.org/caseSearch/

| Case # | Caption | Previous Balance | Amount Paid | Balance Due | S/T |
|---|---|---|---|---|---|
| 2018CP0801578 | Dominic  Lowe, On Behalf Of All Others Similarly Situated  VS   Allura Usa, Llc | $150.00 | $150.00 | $0.00 | 699 |

| Total Cases: | 1 | | $150.00 | $150.00 | $0.00 |
|---|---|---|---|---|---|

ReceiptMULTICase.rpt V6.1